In re Edward Lee STUTSMAN, d/b/a American Images, d/b/a Blue Line Enterprises, Inc., Debtor.

TUSCO BUDGET OUTLET, INC., Plaintiff,

v.

Edward Lee STUTSMAN, Defendant.

Bankruptcy No. 92–04329–W.
Adv. No. 93–0002–W.

United States Bankruptcy Court, N.D. Oklahoma.

May 28, 1993.

James Eagleton, Tulsa, OK, for plaintiff.

Stephen Riley, Tulsa, OK, for defendant.

---

### MEMORANDUM DECISION AND ORDER

MICKEY DAN WILSON, Chief Judge.

This matter came on for trial on the 6th day of May, 1993. Plaintiff Tusco Budget Outlet, Inc. ("Tusco") appeared through its agents Ray Roberts and Hal Barrett and by its attorney James Eagleton. Defendant Edward Lee Stutsman ("Stutsman") appeared in person and by his attorney Stephen Riley. The Court reviewed its previous orders denying motions for summary judgment and its "... Order of Instruction." In accordance therewith, the Court proceeded to hear the evidence of Tusco. After Tusco's presentation of its evidence, Stutsman moved to dismiss, which said motion was denied. Thereafter Stutsman presented no evidence. Upon consideration thereof, and of the record herein, the Court finds, concludes, and orders as follows. A separate and detailed recitation of facts is unnecessary, for reasons stated below.

Tusco sued Stutsman in the District Court of Tulsa County, Oklahoma ("the State Court action") before the Honorable David L. Peterson ("Judge Peterson"). Tusco alleged that Stutsman, in his former capacity of officer and agent of Tusco, had usurped for himself a corporate business opportunity of Tusco. In the State Court action, after a full and complete trial consuming approximately two days, Judge Peterson made extensive findings of fact and conclusions of law, to the following effect. Judge Peterson found that Tusco was formed for the purposes of buying and selling used furniture; that Stutsman was a stockholder in Tusco; that Stutsman was president, chief operating officer and primary salesman of Tusco; that Stutsman, in the aforementioned capacities as officer and employee of Tusco, sought business for and on behalf of Tusco; that Stutsman, through various trade names and other corporations which he controlled, entered into contracts with customers of Tusco for his own use and benefit; and that Stutsman thereby received, personally, profits which should have gone and which rightfully belonged to Tusco, in the sum of $75,507.84. Judge Peterson concluded that Stutsman had a fiduciary obligation to Tusco; that Stutsman breached said obligation; that Stutsman acquired property in which Tusco had an interest; that Stutsman profited thereby; and that Tusco suffered damages thereby. Judge Peterson gave judgment for Tusco and against Stutsman in the amount of $75,-507.84, plus interest and costs which were thereafter determined to be $1,280.00. These determinations are more fully set forth in the State Court's "Findings of Fact, Conclusions of Law and Judgment," which said document is hereby adopted and incorporated herein by reference.

In short, Judge Peterson has already determined that Stutsman stole part of Tusco's business, for his own use and benefit. See *In re Romero*, 535 F.2d 618 (10th Circuit 1976).

At pre-trial conference, this Court issued its "... Order of Instruction" acknowledging the facts as set forth in the State Court's judgment; determining that Stutsman may not collaterally attack the findings of fact as determined by Judge Peterson in the previously tried action between the parties; and ordering that the findings of fact made by Judge Peterson shall be admitted as the findings of fact, in part, in this proceeding. The Court entered this order for the following reasons. In *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991), the United States Supreme Court held that collateral estoppel principles apply in proceedings for exception to discharge under 11 U.S.C. § 523(a). Here, the doctrine of collateral estoppel precludes this Court from relitigating the facts as determined by Judge Peterson. The factual issues previously determined in the State Court action are identical with those presented to this Court in this action; the parties involved are the same; each party in the prior State Court action

had a full and fair opportunity to litigate the issues in that action; and the prior State Court action was actually tried and finally adjudicated on the merits. See *U.S. v. Rogers*, 960 F.2d 1501 (10th Circuit 1992); *In re Lombard*, 739 F.2d 499 (10th Circuit 1984); *Murdock v. Ute Indian Tribe, et seq. and et al.*, 975 F.2d 683 (10th Circuit 1992); Jeffrey Thomas Ferriell, *The Preclusive Effect of State Court Decisions in Bankruptcy*, 58 Am. Bankr.L.J. 349 et seq. (1984); *In re Wallace*, 840 F.2d 762 (10th Circuit 1988); *Northern Natural Gas, et al. v. Grounds, et al.*, 931 F.2d 678 (10th Circuit 1991).

■ The question remains whether these prior determinations suffice to establish the elements of Tusco's present causes of action under 11 U.S.C. § 523(a)(4), (6). The prior determinations compel certain conclusions, or mixed findings and conclusions, herein— namely, that a debt exists between the parties; that said debt results from deliberate acts, wrongful under the circumstances, committed by Stutsman; that Stutsman committed these acts while acting as president, director, chief operating officer and primary salesman of Tusco; that in these offices and positions, Stutsman occupied a fiduciary capacity with respect to Tusco under Oklahoma law; that this fiduciary capacity existed before the usurpation of corporate opportunity occurred; and that Stutsman's conduct damaged Tusco by diverting its business and reducing its profits. In its orders denying Tusco's and Stutsman's motions for summary judgment, this Court ruled that these matters suffice to establish all the elements of Tusco's causes under § 523(a)(4), (6), with two exceptions or reservations. The Court preserved the following questions for trial: first, under § 523(a)(4), "whether the corporate opportunity [which Stutsman usurped] was itself a thing of value" tantamount to a trust *res*, for purposes of showing a "fiduciary capacity" within the meaning of § 523(a)(4), order denying Stutsman's motion for summary judgment, p. 4; and second, under § 523(a)(6), whether there was any evidence of " 'any claimed justification or excuse' " for Stutsman's conduct, *id.* p. 5, quoting *In re Pasek*, 983 F.2d 1524, 1527 (10th Circuit 1993), for purposes of showing "malice" within the meaning of § 523(a)(6). In

effect, the Court gave the parties an opportunity to present any further evidence which might exist, bearing on these two elements of Tusco's causes, rather than risk summary judgment on a record which might not be complete; see *In re Curtis*, 38 B.R. 364, 368 (B.C., N.D.Okl.1983).

At trial, Tusco introduced no new evidence, but merely invoked the pre-established record; and Stutsman offered no evidence at all. The Court is now confident that it has before it all the facts and circumstances which both parties have to offer; and the Court makes its final conclusions accordingly.

The fiduciary capacity in question here is a fiduciary occupation or statutory trust which "do[es] not fit comfortably within th[e] traditional classification" of trusts, *In re Turner*, 134 B.R. 646, 650 (B.C., N.D.Okl.1991). Nevertheless, a corporate opportunity is a thing of value, sufficiently concrete and ascertainable to be comparable to "money," to constitute "property," and to be analogous and tantamount to a trust *res*, for purposes of exception to discharge under § 523(a)(4). See *In re Turner*, supra, 134 B.R. at p. 656. The Court concludes that the last element of Tusco's cause under § 523(a)(4) is satisfied; and Stutsman's debt to Tusco must be excepted from discharge thereunder.

■ "Malice" is ordinarily inferred if the debtor "willfully disregarded the rights of" a creditor, *In re Posta*, 866 F.2d 364, 368 (10th Circuit 1989), or "if the debtor possesses actual knowledge, or if it is reasonably foreseeable, that his conduct will result in injury to the creditor," *In re Grey*, 902 F.2d 1479, 1481 (10th Circuit 1990). See generally *In re Culp: Newsome v. Culp*, 140 B.R. 1005, 1014–1015 (B.C., N.D.Okl.1992). Here, Stutsman certainly knew or could reasonably foresee that his conduct would injure Tusco to the same extent that it benefited Stutsman himself; and at the very least, he willfully disregarded Tusco's rights to profit from those customers who came to Stutsman seeking Tusco's services. Such inference of malice may be rebutted by "evidence of the debtor's motives, including any claimed justification or excuse," *In re Pasek*, supra. Here, the record is devoid of evidence that

Stutsman's motives were anything other than purely selfish and mercenary, or that there was any justification or excuse whatever for his conduct. The Court infers that Stutsman's conduct was indeed "malicious" under § 523(a)(6). See *In re Culp,* supra. The Court concludes that the last element of Tusco's cause under § 523(a)(6) is established; and Stutsman's debt to Tusco must be excepted from discharge thereunder.

Accordingly, the debt owed by Stutsman to Tusco for usurpation of a corporate opportunity, plus interest, costs and attorneys fees as determined by the State Court, is excepted from discharge pursuant to 11 U.S.C. § 523(a)(4), (6). Judgment shall be entered in conformity herewith. Tusco shall prepare and submit an appropriate form of judgment.

AND IT IS SO ORDERED.